IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMED ABEDELKARIM, <u>et</u> <u>al</u>., )
                                      )
              Plaintiffs,             )
       v.                             )  Civil. Action No. 05-1783 (EGS)
                                      )
                                      )
JAMES K. GLASSMAN,                    )
Chairman, Broadcasting Board )
       Of Governors,                  )
                                      )
              Defendant.              )
_____)

<u>DEFENDANT'S RESPONSE TO PLAINTIFFS' STATEMENT
OF DISPUTED FACTS AND UNDISPUTED FACTS</u>

     The defendant responds to the plaintiffs' statement of
disputed facts and undisputed facts as follows:

     1.  Admitted.

     2.  The defendant admits that Mr. Hooper explained that the
rationale behind the creation of MERN/SAWA was "because of the
overwhelming need that the United States government felt to reach
people in the Middle East, in the Arab world and it was
determined that a different format was required to do that,
including a different news format than the Arabic Service had."
(Hooper Dep., p. 186-187)

     3.  The Court is directed to the February 13, 2002
memorandum, for a full and accurate statement of its contents
(Bates No. 002313).  As stated in that memo, there were 32
positions for SAWA (MERN) in Washington, D.C. and New York, 8 of
which were GS-13 Supervisory (IRBs)(Shift Editor) positions and

12 GS-12 IRB (News Writer) level, with an additional 4
Washington, D.C. correspondent positions and 1 New York
correspondent position at the GS-12 level.[1]  The memo also notes
that of the 34 then current Arabic Branch employees,
approximately 7 employees woulld have to be placed outside of
SAWA because 5 of the 32 SAWA jobs were already filled or above
the grade level current employees could compete for (Id.).  8 GS-
13 positions were filled in April, 2002 and 12 GS-12 level
positions were filled in August/September, 2002 (April 12, 2002
Memo from G. Thatcher to J. Welch, Bates No. 001129; April 16,
2002  Memo from G. Thatcher to J. Welch, Bates No. 001130; August
20, 2002 Memo from M . Harb to S. King, (Bates No. 00131).

    4.   Admitted.

    5.   Denied.  During the initial selection process, there
were 12 GS-12s and 8 GS-13s authorized and selected.  The Court
is directed to the documents for a  full and accurate statement
of their contents (See Paragraph 3 above).  Subsequent to the
initial staffing at issue in the instant suit, additional
positions were authorized, vacancy announcements were issued and
selection made.  These subsequent positions were not subject to
the Memorandum of Understanding (MOU) between the agency and the

---

[1] The correspondent positions were advertised and filed in
September, 2002 (Bates No. 002663).  These positions were not
covered by MOU between the agency and the Union concerning the
initial staffing of SAWA.  Plaintiffs did not apply for these
positions.

Union (see e.g. Bates Nos. 000272-00278, 003195-003920------).
The plaintiffs, except for Ms. El-Bishlawy, failed to apply for
any of the other SAWA positions subsequently announced
(Abdelkarim Depo, December 2004, p. 22; p. 76; Abdelrahman Dep.,
December, 2004, pp. 27, p28:1, p. 61;  Alkhateeb Dep., January
2005, p. 28; El-Masry Dep., January 2005, p. 34-36; January 2007,
p 32).  Ms. El-Bishlawy applied for a subsequently announced
position in July, 2002 (El-Bishlawy Dep., December 2004, p. 28;
January 2007, p. 23-24).  This paragraph mischaracterizes the
record and fails to raise an issue of material fact.

    6.   Denied.  They were not considered because they did not
apply.  Plaintiffs, except Ms. El-Bishlawy, failed to apply for
any subsequent GS-12 positions (See Paragraph 5).  The record
shows that plaintiffs were considered for the GS-12 positions
that initially staffed SAWA consistent with the agreement with
the union (ROI, Ex. 35).  Subsequent positions were announced and
filled by the normal competitive process; i.e. that all
interested applicants had to apply. Id.  None of the plaintiffs
applied for the subsequent positions, except Ms. El-Bishlawy.
Ms. Bishlawy's non-selection for the position is not at issue in
this suit. Id.  This paragraph mischaracterizes the record and
fails to raise an issue of material fact.

    7.   Denied as stated.  The undisputed record reveals that
Arabic Branch employees did not have to apply for the initial

3

positions at their same grade level, but they still had to
compete with all applicants. The Court is directed to the
Memorandum of Understanding (MOU) between the Agency and the
Union for a full and accurate statement of its contents (ROI, Ex.
35). As stated in the MOU, this method to fill vacancies was to
facilitate the transition from the Arabic Branch to SAWA without
resorting to a Reduction in Force (RIF). Once applications and
resumes were solicited, management evaluated the employees and
selected or assigned them to positions and shifts appropriate to
SAWA operations, training, and development (Id.). When the
plaintiffs were not selected for the GS-12 or GS-13 positions in
SAWA as part of this initial transition, they were reassigned to
other positions within VOA consistent with the MOU (Complaint
(Compl.), ¶¶ 3, 4, 5, 6, 7). On December 29, 2002, plaintiff
El-Bishlawy was selected for a GS-13, Foreign Language
Information Specialist position at the Department of State
(Compl., ¶ 6).

    8. The defendant admits that Mr. Welch proposed to
management an approach for the initial transition and staffing
from the Arabic Service to SAWA in February, 2002 (Bates Nos.
001069-001073). The Court is directed to the staffing memorandum
for a full and accurate statement of its contents (Bates Nos.
001069-001073; King Dep., Ex. 4). That proposal, which
management accepted, also advised that the Union would have to be

notified that the Arabic Service was being abolished and SAWA
(MERN) was being established (Bates No. 1072).  The goal was to
avoid a RIF by allowing Arabic Service employees to apply for or
express an interest in positions for which they qualified.  It
was also noted that if they do not apply or are not selected for
a position for which they applied in SAWA, they would be
reassigned to appropriate available positions in VOA (Id.).  The
Union accepted this proposal for staffing SAWA as well (ROI, Ex.
35).  When the plaintiffs were not selected for SAWA positions,
they were reassigned within VOA (Compl., ¶¶ 3-7).

   9.   The defendant admits that the goal in the transition
from the Arabic Service to SAWA was to "place as many Arabic
staff members in SAWA positions in order to avoid a RIF (Bates
No.001071; King Dep., Ex. 4).  However, placement in SAWA also
required that the existing Arabic staff members have the skills
and abilities for those new positions (Id.).  Ultimately it was
determined that the plaintiffs did not have the skill sets for
the new SAWA positions under the dramatically new format (Harb
Dep., Vol I, pp. 113-130, Vol II, pp. 419-425, 441-444, 446-450).

   10.  This paragraph mischaracterizes Mr. Welch's testimony.
Mr. Welch testified that prior to the transition to SAWA, he
attended meetings with Arabic Service staff.  In those meetings,
he told staff that a process would be followed where Arabic
Service employees would be considered for positions in SAWA

(Welch Dep., Vol I, p. 77-79).  The process was contained in Mr.
Welch's February, 2002 memo (Id., Bates Nos. 001069-001073).
Under that process, Arabic Service employees would be considered
for positions prior to outside applicants (Id.).  Although Mr.
Harb's name was not on the distribution list for the February,
2002 memo from Mr. Welch, Mr. Harb was notified about the process
for staffing (Id., see Response to No. 8).

    11.  Denied as stated.  This paragraph contains plaintiffs'
characterization of the Welch memorandum.  The defendant admits
that Ms. Gandji received an email containing Mr. Welch's proposal
for the initial staffing of SAWA (Gandji Dep., Vol I., pp. 57-58,
Bates Nos. 001069-001073).  The memo provides an order in which
the Arabic Service employees would be considered for the new
positions within SAWA.  Contrary to plaintiffs' inference, the
memo does not state or imply that "a hiring preference" would be
given to the Arabic staff.

    12.  The defendant denies the implication of this paragraph.
Arabic Service employees (internal candidates) were to be
considered or evaluated for the new positions before external
candidates.  There was no preferential hiring.  There was no
requirement that an employee from the Arabic Service, who met the
minimal or basic qualifications for the positions, had to be
selected over external candidates who were better qualified.  If
that were the case, no competition would have been necessary and

the vacancy announcement would have not been open to all
applicants (Bates No. 000002). This paragraph mischaracterizes
Mr. Welch's February, 2002 memo. The Court is directed to that
memo for a full and complete statement of its contents (Bates
Nos. 001069-1073). Arabic Service employees were to be
considered and evaluated for positions in SAWA, based on the
skills and abilities required for the new SAWA positions (Marsh
Dep., Vol I, p. 203; Gandji Dep., Vol. II, p. 169-170).

13. The defendant admits that 22 U.S.C. § 1474 applies to
the agency. The statutory provision authorizing the agency to
hire non-U.S. citizens is contained in the Smith-Mundt Act,
codified at 22 U.S.S. § 1474(1). The defendant avers and the
record confirms that the agency complied with the statutory
provision.

14. Admitted. Mr. Welch further explained that the
selecting official provides the Office of Personnel with the
reasons for determining that the non-U.S. citizen is better
qualified than the citizen for doing the particular job involved
(Welch Dep., Vol. II, pp. 187-188). Mr. Harb provided his
reasons (See Bates Nos. 000561-000562).

15. Mr. Harb submitted his justification as required by the
regulation (Id.).

16. Admitted.

17. The defendant admits that Mr. Welch was reading from

7

his February, 2002 memo which proposed an approach to phase out the Arabic Service and for the initial staffing of SAWA (Bates Nos. 001069-001073; Welch Dep., Vol. I, pp. 83-87). The defendant denies the implication of this paragraph. All the candidates considered met the minimum or basic qualifications of the positions. The selecting official was to determine those who were the most qualified for the new position (See Welch Dep., p. 87-88). The Court is directed to Mr. Welch's memo for a full and accurate statement of its contents (Id.).

18. The defendant admits that this is an accurate quote from the deposition of Mr. Welch, but denies that there was a "hiring" preference as implied by the plaintiffs.

19. The defendant admits that James Hooper was hired in December, 2001 as the Staff Director of Radio SAWA (Hooper Dep., p. 7-8). In this capacity, he helped get the SAWA pilot project started and that SAWA went on the air in February or early March, 2002. He assisted by processing the hiring of staff members and contractors (Id., p. 15). Prior to going on the air, he worked with a team that helped hire some initial staffers for the pilot project and processed those actions (Id.).

20. The defendant admits that Ms. King, Personnel Management Specialist, initially drafted the vacancy announcements using information from the position descriptions (King Dep., pp. 19-20, 23-24). She then sent them to Mr. Hooper

8

for additions and corrections (Id., p. 24).  Mr. Hooper obtained
information from Mr. Harb regarding the skills and experience he
was looking for in the successful candidates for the GS-13 and
GS-12 International Radio Broadcaster (IRB) positions in SAWA and
integrated that into the vacancy announcement (Hooper Dep., pp.
29-32).  Then the vacancies were posted by the Office of
Personnel (King Dep., pp. 24-25).  After the vacancy
announcements closed, Mr. Hooper set up the interviews, provided
the paperwork, and communicated the selection decisions to the
Office of Personnel and the candidates (Hooper, p. 33).

21.  See Response No 20.

22.  The defendant admits that Mr. Hooper testified that he
agreed that the most important KSA's for a position is indicted
by the point value assigned (Hooper Dep., pp. 41-42).  Mr. Hooper
did not recall what input, if any, he or Mr. Harb had into the
point values assigned to the KSAs (Id., pp. 43, 59-60).  This
fact is immaterial since all the plaintiffs were considered for
the GS-13 positions, except Ms. El-Masry, who withdrew her
application for the GS-13 positions (Harb Dep., Vol. I, pp. 113-
130; Ganji Dep., Vol. II, pp. 234-236; Hooper Dep., pp. 89-90;
Hooper Note dated March 29, 2002, re: Faiza El-Masry, Bates No.
001125).  Moreover, the merit promotion certificate sent to the
selecting official for the GS-13 positions does not contain the
relative ranks of the candidates (Bates No. 000010).  Only the

competitive DEU certificate reflected the relative ranking of the candidates (Bates Nos. 000006, 000010).  Only two plaintiffs (Mr. Abdelkarim and Ms. Abdelrahman) were on the DEU certificate.

23.  The defendant admits that Ms. King believed that Mr. Harb determined the number of vacancies under the GS-13 and GS-12 announcements (King Dep., pp. 24-25).  Ms. King's belief was incorrect.  Ms. King as a personnel specialist would not be privy to management decisions.  The undisputed record shows that IBB management determined the number of vacancies to be filled under each announcement.  The Court is directed to the February 13, 2002 Status Report from J. Welch (Bates Nos. 002310-002313) and the April 12, 2002 memo from G. Thatcher (Bates No. 001129) for the number of positions authorized (See also Gandji Dep., Vol. II, pp. 85).

24.  The defendant admits that the GS-13 positions were advertised as a Supervisory International Radio Broadcaster (IRB) because the successful candidates would function as Shift Editors.  Defendant also admits that the GS-12 IRB positions were advertised as IRBs and the successful candidates would function as news writer/broadcasters.  The knowledge, skills and abilities, however, were not essentially the same for the two positions as plaintiffs contend.  This does not create a material issue of fact.  The record clearly shows that the KSAs for the GS-13 position emphasized editing and management.  The record is

clear, contrary to plaintiffs' erroneous assumption, that they were not simply competing for their old jobs.  All senior managers recognized that the SAWA concept was a radical change for any language service broadcasting VOA had done previously, including the Arabic Service (Marsh Dep., Vol I, pp. 116-117, 203; Gandji Dep., Col. I, pp. 68-69; Vol II, pp. 169, 173, 196-197; Harb Dep., Vol. II, pp. 100-103; King Dep., p. 199; Bates No. 002317).

25.  Admitted.

26.  The defendant admits that there were three GS-13 certificates issued: one merit promotion certificate; one non-competitive reassignment certificate; and one certificate from the Delegated Examining Unit (DEU)(King Dep. pp. 30, 78-80; Welch Dep., Vol. I, pp. 22, 42, 52-53, 59-62; Bates No. 000006-000010). One certificate was never issued (Id., see Response to Paragraph Nos. 31-35).

27.  Admitted.

28.  Admitted.

29.  The defendant admits that Ms. King issued a merit promotion certificate to Mr. Harb for the GS-13 positions after the candidates were rated and ranked (King Dep., p. 54).  The defendant admits that merit promotion certificates are issued in alphabetical order without the relative scores.  The candidates placed on the certificate was based on the numerical scores from

the ratings and rankings panel (King, Dep. p. 56-57, 63).  Ms.
King initially issued a merit promotion certificate with ten
names because there were multiple vacancies (Id., p. 79-80).
This certificate included plaintiff Abdelkarim, Abdelrahman and
El-Masry (Id., Bates No. 000014).  The initial merit promotion
certificate did not include plaintiffs El-Bishlawy or Alkhateeb
because they were not ranked in the top ten.  Significantly, when
Mr. Welch authorized a new merit promotion certificate,
plaintiffs El-Bishlawy and Alkhateeb along with Wassila Beldi
(selectee) were then eligible to compete for further
consideration.  Neither plaintiff El-Bishlawy nor plaintiff
Alkhateeb was deemed qualified under the DEU rankings (Bates Nos.
00006, 000011-0000012) (Id.).

30.  Admitted.

31-35.    The defendant admits that for the GS-13 position,
a merit promotion certificate with ten names was issued, then
withdrawn (King Dep., p. 80).  Then a certificate with five names
was drawn up, but not issued to the selecting official (Id., p.
120).  At this point, Mr. Welch, the Director of Personnel,
became aware of the situation (Welch Dep., Vol I, pp. 22; Vol II,
p. 132-158; King Dep., pp. 70-71).  Although he could not recall
if he had heard about it from Ms. King, employees, or the Union,
Mr. Welch determined that all of the 17 candidates being
considered under the merit promotion process should be certified

12

to the selecting official because, although there was a ten point
difference between the candidate ranked number 1 and the
candidate ranked number 17, the difference between each
candidate's individual score was not significant enough to
prevent all 17 candidates from being certified, particularly
where there were multiple vacancies to be filled (Welch Dep.,
Vol. I, p. 40, 42; Vol. II, pp. 156-157; King Dep., p. 73).  The
remainder of these paragraphs contain plaintiffs'
characterizations, opinions, and arguments and do not create a
material issue of fact.

    36.  This paragraph mischaracterizes the record.  Ms. King
acknowledged that the standard procedure is to send five names on
a merit promotion certificate (King Dep., pp. 110-111).  Ms. King
also stated that she was told by either Mr. Conboy or Mr. Welch,
her first and second line supervisors, to send all 17 applicants
on a certificate because there were multiple vacancies and the
scores of the applicants were similarly close (Id., p. 116).

    37.  Defendant admits the selection process for the GS-13
position was unusual but denies any inference of impropriety as
implied by plaintiffs.  Admittedly, the initial staffing for SAWA
involved more than the routine merit promotion action.  The
agency was creating a brand new radio station substantially
different from anything VOA had done before (Marsh Dep., Vol. I,
pp. 116-117, 203, 276-277).  Moreover, because of the number of

13

vacancies to be filled and the rankings of the applicants
relative to one another, Mr. Welch recommended the widest
possible competition (Welch Dep., Vol. I, pp. 37-43).

38.  Ms. King's belief is demonstrably incorrect and has no
basis in law or fact.  The record shows Mr. Welch relied upon,
among other things, the Agency's merit promotion policy when
deciding to certify all 17 names (Welch Dep., Vol. I, pp. 41-43;
Manual of Operation and Administration (MOA), Part V-A, § 460,
Bates No. 001094; see also Excerpt of Negotiated Labor-Management
Agreement between Agency and AFGE, Local 1812, Article 14, Bates
No. 001119-001120).

39.  This paragraph constitutes plaintiffs' opinions,
conclusions, and arguments.  The defendant admits that Mr.
Dahiyat has served as a selecting official, but denies that he
has ever been a selecting official in the circumstances presented
here.  However, there is no evidence that Mr. Dahiyat or the
other supervisors cited by plaintiffs were ever involved in a
selection process at VOA that completely staffed a new radio
station which was completely different than anything VOA had done
in the past (Marsh Dep., Vol. I, p. 203).  Further, there is no
evidence that he was a selecting official in a situation where
there were so many applicants, so many new positions to be
filled, or one that required prior Union approval.  Mr. Dahiyat
clearly recognized that SAWA was significantly different in style

14

and content as well (Dahiyat Dep., pp. 58, 192).

40.  Admitted.

41.  This paragraph contains plaintiffs' opinion and
argument of counsel.  The record shows that Mr. Welch determined
all 17 candidates for the GS-13 positions should be certified
because there were six vacancies and the candidates' ratings were
so close relative to one another.  Although plaintiffs complain
that the seven lowest ranked individuals were placed on the
certificate and one was selected, they neglect to note that two
plaintiffs ranked in the group of "seven lowest ranked" and were
placed on the certificate (Bates No. 000006).

42.  The defendant admits that plaintiffs correctly quote
Mr. Welch's memorandum, but denies that it controverts the
defendant's statement of material facts ¶ 32.  The Court is
directed to the full text of the memorandum (Alkhateeb ROI, Ex.
6, p. A-11; Welch Dep., Vol. I, p. 42, Vol. II, pp. 156-157; Harb
Dep., Vol III, p. 624).

43.  Mr. Harb admits that he was aware that some people
received notices that they were not referred for consideration,
but denies that Mr. Harb's deposition controverts Defendant's
Statement of Facts ¶ 32 (Harb Dep., p. 237-239).

44.  Defendant admits that Mr. Harb advised one person to go
to "personnel" not to him (Harb Dep., p. 238-239("I have nothing
to do with this")).  The defendant denies this controverts

15

Defendant's Statement of Facts ¶ 32.

45.    The defendant admits that Mr. Cherkaoui complained to Mr. Harb that he was not on the list of eligibles.    The selections had not been made.    The defendant denies that this controverts Defendant's Statement of Facts ¶ 32.

46.    The defendant admits that these cites are accurate, isolated quotes from plaintiffs' depositions, but denies that they controvert Defendant's Statement of Fact ¶ 32.    Moreover, Mr. Harb doesn't remember Ms. Beldi coming to him to complain.    Further, Ms. Beldi indicates that Mr. Harb told her that he couldn't do anything about it (Beldi Dep., 193-194; Harb Dep., 238-239).    Regardless, this apparent dispute of fact is immaterial (See Response to Paragraph No. 47).

47.    The defendant admits that Ms. Beldi testified that she complained to Mr. Harb, but that Mr. Harb only recalls Mr. Cherkaoui coming to him to complain (Harb Dep., 238-239).    This dispute of fact is immaterial and fails to controvert Defendant's Statement of Fact ¶ 32.

48.    The defendant admits that Mr. Harb went to personnel to see who applied and who made the certificate of eligibles.    He wanted to "see them all because he wanted to see how the project was evolving because we always need the best qualified people" (Harb Dep., p. 387).    The defendant denies that this controverts Defendant's Statement of Fact ¶ 32.

16

49.  Denied.  This paragraph is plaintiffs' opinion and argument.  The Court is directed to Mr. Welch's testimony which gives his explanation and reasoning for his decision (See Welch Dep., Vol. I, p. 22, 42, Vol. II, pp. 95, 156-157).

50.  Admitted in substance.  The DEU certificates lists the candidates with scores in rank order.  The merit promotion certificates and the lateral reassignment certificates do not contain the candidates score, but are listed alphabetically (Bates Nos. 000001, 000007-000008, 000010; ROI, Ex. 35).  There were only two certificates for the GS-12, a combined merit promotion and reassignment certificate and a DEU certificate (Bates Nos. 000557-000558).

52.  The defendant admits that for the GS-12 position, there was a reassignment certificate and DEU certificate (See Bates Nos. 000557-000558).

53.  Denied.  The undisputed record demonstrates that there was only one DEU certificate that contained both citizens and non-citizens (See Bates No. 000057).  The only GS-11s who applied for a promotion were non-citizens and therefore, referred under the DEU procedures (King Dep., pp. 145-148).

54.  Admitted.

55.  Admitted, except to note that two of the plaintiffs would not have made the certificate if Mr. Welch had not decided to forward all the candidates for consideration.

17

56.  Admitted.

57.  Denied.  The initial selection for supervisory IRB
shift editors were: Hala Arafa (Egyptian, 40), Wassila Beldi
(Tunisian, 46), Mohamed Cherkaoui (Moroccan, 41), George Shammas
(Palestinian, 65), Nicola Zaboura (Jordanian, 63), Mohamed Saad
(Eygptian, 54), Daniel Nassif (Lebanese, 44, external hire),
Munir Nasser (Palestinian, 65, external hire)  Usama Faraq
(Egyptian, 41) was selected as a producer at the start up phase
before the GS-12/GS-13 IRB selections at issue here.  Mr.
Thatcher was the selecting official (Gandji Dep., Vol. II, p.
175).  Diaa Bekheet (Egyptian, 41) was selected for an internet
position.  He did not encumber one of the Shift Editor positions
(Harb Dep., Vol I., p. 162).  This dispute of fact is immaterial.

58.  Denied.  Not all the plaintiffs actually applied for
the GS-12 IRB positions nor were the required to apply in order
to be considered.  This dispute of fact is immaterial since they
were all interviewed and considered for the GS-12 positions.

59.  Admitted.

60.  Admitted, but the defendant denies that this
controverts Defendant's Statement of Facts ¶ 48.  There are no
inconsistencies as stated by plaintiff.

61.  Admitted in substance, except to note there appears to
be minor discrepancies in the ages of the selectees (See
Defendant's Memorandum of Points and Authorities (Def. Memo), pp.

18

28-31).

62.  The defendant admits that seven members of the Arabic Service were not selected for positions at SAWA.  The undisputed record shows that the number of positions initially authorized by BBG/VOA management for SWA would require seven Arabic Service staffers to be reassigned to positions within VOA (February 13, 2002 Memo re: MERN Status Report on Personnel Actions, Bates No. 002310-002313).  The Arabic Service was staffed primarily with individuals of Egyptian national origin (Marsh Dep., Vol. II, pp. 23-65).  Mr. Ziad Abdelrahman was considered for the GS-12 positions and applied for the GS-13 IRB position but not selected (Bates No. 000006).  Mr. ----- Allan did not apply for the GS-13 position but was considered for the GS-12 position.  He was not selected  (Bates No. 000006-000007, 000014, 000558 (GS-12 certificate)).  The defendant does not know the other staffer referenced in this paragraph.  Ms. Abdelrahman is Jordanian, not Egyptian (Marsh Dep., Vol. I, pp. 63-64).

63.  Mr. Abdelrahman was rated 94 and ranked eight out of twelve on the DEU certificate for the GS-13 position (Bates No. 000006).

64.  Denied. This paragraph consists of plaintiffs' opinions and conclusions, not a statement of fact (See Response to Paragraph No. 23).  The four additional IRB positions were authorized for SAWA after the initial staffing selection involved

in this case (Id.).  In order to be considered for these newly
authorized positions, one had to apply.  Except for Ms. Bishlawy,
the plaintiffs did not apply.  The correspondent positions
initially authorized were competitive positions not covered by
the MOU.  Plaintiffs would have to apply for these positions.
One was advertised in February, 2002 and cancelled.  They were
not readvertised until September and November, 2002 (Bates No.
002324, 002349-002352, 002663, 002751).

    65-81.   Paragraphs 65-81 consist of plaintiffs personal
assessment of their experience and qualifications for the GS-12
and GS-13 positions in question.  Plaintiffs' subjective belief
as to their superior qualifications for the new positions at SAWA
and their competitor's inferior talents fails to raise an issue
of fact.  The defendant notes that the evaluations cited by
plaintiffs relate to their skills and abilities at their position
in the Arabic Service.  As their rating officer, Mr. Marsh
repeatedly observed that the new positions at SAWA were
drastically different requiring different skill sets (Marsh Dep.,
Vol. I, pp. 116-117, 203, 276-277; Gandji Dep., Vol. II, p. 169-
170).

    82.  This paragraph is plaintiffs' characterization of Mr.
Harb's testimony.  Mr. Harb believed that the plaintiffs were not
qualified for the newly created positions in SAWA which required
a different skill set than those in the Arabic Service.  Because

of the limited "number of positions," the plaintiffs were not the "most qualified among the Arabic Service at the time." (Harb Dep., Vol I, pp. 163-168).

83.    Plaintiffs assertion mischaracterizes Mr. Harb's testimony and is argumentative.  Mr. Harb "had a job description and a mission and a task and I was comparing people to that task . . . . I concluded that they were not qualified for that task." (Harb Dep., Vol —, p. 180).  Plaintiffs repeatedly and erroneously attempt to use the term "not qualified" in the personnel sense of "minimally qualified."  Moreover, there was no obligation for Mr. Harb to compare the qualifications vis-a-vis each other as opposed to evaluating the candidates individual qualifications for the job(s) in question.

84.    Admitted in substance.  This was an interview panel, not a selection panel (Marsh Dep., Vol. I, pp. 129-130; Gandji Dep., Vol. I, pp. 25-26, 36).  The only selecting official was Mouafac Harb (Id.).  Mr. Harb identified his  "leading candidates for the positions," discussed these candidates with the panel, and then "we agreed." (Harb Dep., Vol. I, pp. 125-130; Gandji Dep., pp. 34-37; Marsh Dep. Vol. I, pp. 129-130).  Mr. Harb wanted to discuss the leading candidates "and who performed better in the interviews." (Id.)  Ms. Gandji and Mr. Marsh's agreed with Harb's assessment (Id.).

85.    This paragraph is plaintiffs' characterization of the

testimony.  <u>See</u> Response to No. 58, 84.  Admittedly, Mr. Marsh and
Ms. Gandji did not know Arabic.  Mr. Marsh had supervised the
plaintiffs for several years.  Indeed, plaintiffs relied heavily
on Mr. Marsh's evaluations of their performance in the Arabic
Service in an effort to demonstrate their "superior"
qualifications.  However, both had been managers in the Foreign
Language Services for many years.  It should be noted that Mr.
Marsh was the Chief of the Arabic Service and supervised and
evaluated Arabic Service employees without knowledge of Arabic.
By contrast, Mr. Harb knew the Arabic language and had observed
the candidates performance in the new radically different format
and style (Marsh Dep., p. 207).  As Mr. Marsh noted, the
establishment of SAWA established "a new discipline that has
never been attempted by a Language Service in the history of
VOA." (Marsh Dep., Vol. I, p. 203).

86.  Plaintiffs mischaracterize Mr. Harb's testimony.  He
did not recall a discussion by panel members comparing GS-13
candidates qualifications before or after his selection
recommendations were presented (Harb Dep., Vol I, pp. 129-132).
However, Mr. Marsh paid attention to the interviews and the panel
discussed the candidates (Marsh Dep., Vol. I, p. 129-130, 221,
252).  Mr. Marsh concurred in Mr. Harb's choices (Marsh Dep.,
Vol. I, pp. 129-130, 222-223).

87.  This paragraph consists of selected, disjointed quotes

from Mr. Marsh's testimony.  The Court is directed to Mr. Marsh's complete testimony regarding his role in the interview process in dispute.

88.  This paragraph consists of plaintiffs characterization of the evidence and unsupported conclusions, and isolated quotes. It is not a statement of material fact.

89.  The plaintiffs have correctly quoted from pages 192-193 of Mr. Marsh's testimony.  However, Mr. Marsh observed that Ms. Alkhateeb was never a news writer, had no editing experience, and that for the discipline they were asked to do at SAWA she was not as qualified as the other candidates (Marsh Dep., p. 187-194). Similarly, Ms, Gandji notes that Ms. Alkhateeb's strength was in features and not news (Gandji Dep., Vol. I, p. 81-82).

90.  See Response to Paragraph No. 89.  This statement is immaterial.

91.  Plaintiffs mischaracterize the evidence.  The Arabic Service stopped broadcasting and SAWA began broadcasting in late March or early April, 2002 (Harb Dep., Vol.—, pp. 26-28; Dahiyat Dep., p. 12-13, 46-47).  All Arabic Service employees were transferred to SAWA at that time, including Ms. Alkhateeb.  The selections for the GS-13 Shift Editor positions were made April 21, 2002 (Bates No. 000041).  The selections for the GS-12 IRBs were made in September, 2002 (Bates No. 000624).  Although Ms. Alkhateeb applied for the GS-13 Shift Editor position, according

23

to her prior supervisor and former head of the Arabic Service,
she had no newswriting or editing experience.  The GS-13
positions were different then anything she had done in her career
and Mr. Marsh couldn't imagine her being selected for the GS-13
Shift Writer position (Marsh Dep., pp. 187-188, 189-194).  Ms.
Alkhateeb, however, did work for SAWA under Mr. Harb from April,
2002 until the selection for the GS-12s in August/September, 2002
(Id.).  She was reassigned to a position at VOA's Arabic website
in December, 2002 (Alkhateeb Dep., January, 2005, pp. 13-16).

   92.  Mr. Marsh was unaware of the assertions of the
plaintiffs in Paragraph 91 because the assertion that Ms.
Alkhateeb did not work in SAWA before the selections is a
mischaracterization of the undisputed record and incorrect.  She
worked for SAWA from April, 2002 until her reassignment in
December, 2002 (Alkhateeb Dep., January, 2007, pp. 5-10).
Although Mr. Marsh may have forgotten the exact time sequence of
the selection process, it is clear that he independently
concluded that she was not up to the task (Id.).

   93.  The defendant admits that Mr. Marsh did not observe
either the plaintiffs or selectees working at SAWA from April,
2002 until September, 2002 when the GS-12 selections were made.
However, Mr. Harb did observe the performance and the skills and
abilities of the plaintiffs and the selectees during this period.

   94.  This paragraph is a characterization of Mr. Marsh's

24

testimony which does not constitute a statement of material fact. The plaintiffs correctly quote a small portion of Mr. Marsh's testimony to create an erroneous inference (See also Marsh Dep., pp. 115, 120-123, 151-152, 310, 356).

95.  This paragraph mischaracterizes Mr. Marsh's testimony and is merely an opinion.  Indeed, Mr. Marsh carefully observed the interview process and thought it was fair (Marsh Dep., Vol. I, pp. 230-231, 251-252).

96.  This paragraph does not contain a material issue of fact.  It characterizes the testimony of both Mr. Harb and Mr. Marsh (See Harb Dep., Vol. I, pp. 123-124).

97.  This paragraph contains plaintiffs' mischaracterization of the testimony of both Mr. Harb and Mr. Marsh (See Harb Dep., Vol I., p. 123-124).  It does not contain a material issue of fact

98.  Mr. Harb does not remember any specific questions asked at the interviews, but all members of the interview panel remember that some of Mr. Abdelkarim's responses were poor (Harb Dep., Vol. I, pp. 113-115; Marsh Dep., Vol. I., pp. 105-106, 121-122, 131; Gandji Dep., Vol. I, pp. 66-68, 127; Vol II., pp. 140, 157-158, 236-237).

99.  Ms. Gandji testified that Mr. Abdelkarim performed poorly on the interview as does Mr. Harb and Mr, Marsh (Id.). The remainder of this paragraph is plaintiffs' argument and/or

editorial comment.

100. Denied in part, but this is not a material issue of fact. Ms. Gandji clearly remembers that he performed poorly on at least two of the interviews (Gandji Dep., Vol. II, pp. 62-68, 78-80). She also observed that the jobs plaintiffs were competing for were "very different from the 'block programming' and long format done by the Arabic Service." (Id.)

101. The interview notes speak for themselves. Moreover, plaintiffs' assertion mischaracterize the testimony. Ms. Gandji remembers that he performed poorly on two of the interviews (See Response to Paragraph 100; see also Marsh Dep., Vol. I, p. 105-106, 121-122, 131).

102. This paragraph contains opinions and mischaracterizes Mr. Marsh's testimony. Mr. Marsh was disappointed in Mr. Abdelkarim's interview (Marsh Dep., Vol. I, pp. 105-106, 122, 131). This is confirmed by the testimony of Ms. Gandji (See Response to Paragraph 101).

103. Mr. Marsh's inability to remember the specific interview questions and responses of all the candidates for all the positions is not a material fact that would sustain the plaintiffs burden to demonstrate pretext. For the GS-13 positions, the panel interviewed nineteen applicants and for the GS-12 positions, they interviewed all GS-12 Arabic Service employees who were automatically considered (approximately 24

26

people), and several outside candidates.  Additionally, there were three sets of interviews (Bates Nos. 002248-002304).

104. This paragraph consists of a characterization of Mr. Harb's testimony and plaintiffs' unsupported conclusions.  Mr. Harb remembers interviewing Ms. Abdelrahman but could not remember the specific questions or answers (Harb Dep., Vol. I, pp. 116-120; 177-178).  However, he remembers asking about her reporting skills, her news judgment, and technical capabilities (Id., p. 119).

105.  This paragraph contains a characterization of the testimony and plaintiffs' opinions, conclusions, and argument (Gandji Dep., Vol. II, pp. 81-82 ("Her strength was in features not news"), p. 130 (notes don't reflect her conclusion but candidates' response).  She did not perform as well in the interviews as the selectees (Marsh Dep., Vol. I, p. 273-275).

106. Although the interview panel does not recall the details of the numerous interviews or details of specific interview questions, there was a consensus that Ms. El-Bishlawy, after her interview, was not considered in the top tier of candidates (Marsh Dep., Vol. I, pp. 180-181).

107. This paragraph consists of plaintiffs' argument, unsupported assertions and conclusion.  This is not a material fact in dispute.  A person can have no "managerial experience" yet answer a managerial question "correctly."  Significantly, Ms.

Alkhateeb had no editing or news experience that would qualify
her for the new SAWA format (Marsh Dep., Vol. II, pp. 187-190;
Harb Dep., Vol. III, p. 598).

108. <u>See</u> Response to Paragraph No. 98. This is consistent
with defendant's statement of material fact, Paragraph No. 38.

109. <u>See</u> Response to Paragraph No. 108. Ms. Elmasry did not
perform as well as the selectees during the interview, and
overall, the selectees were better qualified (Marsh Dep., Vol. I,
p. 225, 290; Gandji Dep., Vol. II, pp. 160, 179-180).

110. This paragraph mischaracterizes Ms. Gandji's testimony
and is plaintiffs' unsupported opinion. Ms. Gandji recalled the
conclusion the panel came to after the interviews and when she
provided her affidavit to the EEO investigator (Gandji Dep., Vol.
II, pp. 157-160). Her inability to remember the details of the
interviews due to the passage of time does not create a material
issue of fact. Ms. Gandji did recall that Mr. Marsh spoke very
highly of her and that her strong points were in the longer
format feature writing and not in news (Gandji Dep., Vol. II, pp.
230).

111. Admitted. However, Mr. Marsh also acknowledged that
the skills and abilities needed for SAWA were different from
those required by IRBs in the Arabic Service (Marsh Dep., Vol. I,
pp. 116-117, 203, 276-277).

112. Defendant admits that Mr. Marsh testified that none of

the plaintiffs lacked language skills or news judgment necessary
for the work they performed for him in the old Arabic Service.
Defendant also admits that Mr. Abdelkarim and Ms. El-Bishlawy
were the only ones among the plaintiffs that were editors in the
Arabic Service under Mr. Marsh (Marsh Dep., Vol. II, pp. 397-
398).  Mr. Marsh also acknowledged that the new format used by
SAWA had never been done in a VOA language service before (Marsh
Dep., Vol. I, pp. 203, 276-277).  It was not the same position
(Id.).

113. This paragraph contains plaintiffs' mischaracterization
of Mr. Harb's testimony and unsupported opinion. Mr. Harb stated
that he was looking for voicing skills that delivered the news in
an exciting manner, not a monotone; such as raising your voice at
the right time for a fast-paced, up to the minute radio newscast
(Harb Dep., Vol. II, pp. 447-448).  He determined that the
plaintiffs were not suitable for SAWA's format (Id., pp. 448-
449).  Defendant denies that this paragraph controverts
Defendant's Statement of Fact, Paragraph No. 41 or raises an
issue of material fact.

114. The defendant admits that these were Mr. Marsh's
observations while plaintiffs worked for him in the Arabic
Service.  Mr. Marsh noted that although someone may have a
beautiful voice "it can drone on and it may not be as dynamic as
you want it to be for a particular broadcast." (Marsh Dep., Vol.

I, p. 315).  Mr. Marsh also emphasized that Radio SAWA's style
was radically different from the style used in the Arabic Service
broadcasts (Id., p. 316).  Defendant denies that this controverts
Defendant's Statement of Fact, Paragraph No. 41 or raises an
issue of material fact.

115. The defendant admits that these were Mr. Marsh's
observation of Mr. Abdelkarims voice while working for the Arabic
Service (But, see Response to Paragraph No. 114).  Clearly, Mr.
Marsh was aware that SAWA had a different format from that used
in the Arabic Service.  Defendant denies that this controverts
Defendant's Statement of Fact, Paragraph No. 41 or raises an
issue of material fact.

116. This paragraph takes Mr. Marsh's statement out of
context.  Mr. Marsh also stressed that his opinion of Mr.
Abdelkarim's voice was while he was working for him in the Arabic
Service (Marsh Dep., Vol. I, pp. 313-314).  Mr. Marsh also noted
that he was not the selecting official and that SAWA's delivery
style was radically different than the style used by the Arabic
Service (Id., pp. 313-316).  Defendant denies this controverts
Defendant's Statement of Fact, Paragraph No. 41 or raises an
issue of material fact.

117. Mr. Elshinnawi affidavit does not reference "announcing
skills."

118. The Court is directed to the full testimony of Mr.

Marsh rather than plaintiffs' self-serving isolated quotes.  The
defendant admits that Mr. Marsh testified that Mr. Abdelkarim did
news reporting in the Arabic Service but repeatedly explains the
difference between news writing and reporting at the Arabic
Service as opposed to these at SAWA (Marsh Dep., Vol. I, pp. 116-
117, 203, 276-277).

119. The defendant admits that paragraph 119 is an accurate
quote from a performance appraisal prepared by Mr. Marsh (See
Response to Paragraph No. 118).

120. See Responses to Paragraph Nos. 118-119.

121. The defendant admits that Mr. Elshinnawi held that
opinion.  However, Mr. Marsh explains the difference in the news
gathering, writing, and editing at SAWA from that done at the
Arabic Service (Id.).

122. This paragraph mischaracterizes the testimony.  Mr.
Marsh's interview notes speak for themselves.  The interview
notes reflect what Mr. Abdelkarim says about his own talents and
what he would like to do within the next three years, not Mr.
Marsh's assessment (Marsh Dep., Vol. II, pp. 444).

123. Plaintiffs mischaracterize Mr. Marsh's testimony.  The
Court is directed to the full text of Mr. Marsh's testimony (See
Marsh Dep., Vol. I, pp. 203-205).

124. The defendant admits that this paragraph accurately
reflects Ms. Abdelrahman's testimony concerning her own

qualifications.  Plaintiffs' evaluations and assessments of their own qualifications for the new positions fail to raise an issue of fact (Id.).

125. The defendant admits that Ms. Abdelrahman "told" Ms. Gandji that she had reporting skills.  However, Ms. Gandji remembered that her strengths were in features and not in news (Gandji Dep., Vol II, pp. 81-82).

126. See Response to Paragraph Nos. 124-125.  Moreover, her testimony confirms that her strength was in feature programs and not the style or format to be used by SAWA.

127. See Response to Paragraph No. 125.

128. Defendant admits that Ms. Alkhateeb reported on the Camp David Accord and a "host/coordinator for Arabic prime time news hour" for which she also received an award.  But Mr. Dahiyat explains that the "SAWA project was different from anything she had done in her career." (Dahiyat Depo., p. 187-188)  During Marsh's tenure, she would occasionally "translate" a news story, but "she was never a news writer, and this particular discipline called for news writers." (Marsh Dep., Vol. I, pp. 187-188; 193-194).    129. See Response to Paragraph No. 128.

130. The defendant admits that Ms. Alkhateeb was the host or coordinator for a radio news hour and two T.V. programs (See Response to Paragraph No. 128).

131. The defendant admits that this paragraph is an accurate

statement of Ms. Elmasry's assessment of her own qualifications. This fails to raise an issue of material fact. The defendant notes Ms. (Faiza) Elmasry was primarily "features" oriented, not news (March Dep., Vol. I, pp. 209-214). Mr. Marsh also indicates that Ms. Beldi (a selectee) was far more involved in news and editing (<u>Id</u>.).

132. This paragraph accurately quotes from Mr. Abdelkarim's performance appraisals while he worked in the Arabic Service (<u>See</u> Marsh Dep., Vol. I, p. 103). This paragraph fails to raise an issue of material fact.

133. This paragraph reflects the opinion of one of Mr. Abdelkarim's former supervisors. However, his supervisor did not consider him to be a senior editor. He was not at that level (Marsh Dep., Vol. I, p. 102-104). This paragraph fails to raise an issue of material fact.

134. The interview notes speak for themselves and reflect Mr. Abdelkarim's assessment of his own experience (<u>See</u> Response to Paragraph No. 133). This paragraph fails to raise an issue of material fact.

135. Ms. El-Bishlawy's appraisals speak for themselves. She was assigned editing duties in the Arabic Service (<u>See</u> Marsh Dep., Vol. I, pp. 116-117, 249-250). This paragraph fails to raise an issue of material fact.

136. This paragraph reflects Ms. Alkhateeb's and a co-

plaintiff's opinion of her qualifications (Marsh Dep., Vol. I,pp. 187-190).  This paragraph fails to raise an issue of material fact.

137. This paragraph consists of plaintiffs' characterization of Mr. Marsh's testimony and fails to raise a issue of material fact (Marsh Dep., Vol I, pp. 116-117, 203).

138. The interview notes reflect Ms. Abdelrahman's assessment of her experience, skills, and abilities, not Ms. Gandji's assessment (Gandji Dep., Vol. II, p. 30).

139. This paragraph accurately quotes from the emails from Mr. Marsh to Mr. Abdelkarim, but these are immaterial.  The emails fail to raise an issue of material fact (Marsh Dep, Vol. I, pp. 116-117, 127, 203).

140. This paragraph consists of plaintiffs' unsupported opinions, conclusions and argument.  This paragraph fails to raise an issue of material fact (See Marsh Dep., Vol. I, pp. 318; Harb Dep., Vol. I, pp. 103; Vol. III, pp. 650-651).

141. This paragraph is plaintiffs' opinion, unsupported conclusion, and argument.  It fails to raise an issue of material fact.

142. Denied.  The undisputed record demonstrates that initially only three plaintiffs met the minimum or basic qualification for the GS-13 positions (Bates No. 000014).  After Mr. Welch decided to refer all the applicants to the selecting

34

official, all the plaintiffs were considered for the GS-13 Shift Editor positions (Id., see also Bates Nos. 000006-000007).  This paragraph fails to raise an issue of material fact.

143. This paragraph misconstrues Ms. Gandji's testimony.  He met the basic requirements of the position but others were more qualified (Gandji Dep., Vol. I, pp. 63-64, 66-68 (did not perform well on the interview)).  This paragraph fails to raise an issue of material fact.

144. The defendant admits that plaintiffs' statements accurately reflects Mr. Elshinnawi's opinion.  Mr. Marsh and Ms, Gandji do not share his opinion (Gandji Dep., Vol. I, pp. 66-69; Marsh Dep., Vol. I, pp. 105-106, 121-122, 131).  It should be noted that, according to Mr. Elshinnawi, he was not selected as a Washington correspondent for SAWA.  He complains, that despite his outstanding ratings and awards, a Lebanese journalist was selected.  This paragraph fails to raise an issue of material fact.

145. The defendant admits that if an individual met the minimal qualification for the GS-13, IRB positions they would meet the minimal qualifications for the GS-12, IRB positions.

146. Admitted, but this is immaterial.  This paragraph fails to raise an issue of material fact.

147. Denied.  The undisputed record shows that Ms. Abdelrahman received a higher rating - 95 (See Bates No. 000006).

This dispute of fact is immaterial.

148. Admitted.  However, the merit promotion certificate lists the candidates in alphabetical order, not by rank order (Bates Nos. 000007-000008).  This paragraph fails to raise an issue of material fact.

149. <u>See</u> Response to Paragraph No. 148.  This paragraph fails to raise an issue of material fact.

150. Admitted.  See Response to Paragraph No. 148.  It is also noted that Ms. Alkhateeb and Ms. El-Bishlawy received a score of 21 to Ms. Beldi's score of 20 (hardly significant).  Moreover, Ms. Beldi had significantly more news and editing experience than the two plaintiffs (Marsh Dep., Vol. I, p. 212).

151. Admitted.  <u>See</u> Response to Paragraph Nos. 148, 150.  Mr. Faraq received a score of 20.

152. This paragraph characterizes the evidence and sets forth plaintiffs' argument.  KSA Nos. 2, 3, and 4 are different (<u>Compare</u> Bates No. 000030 (Vacancy Announcement for GS-13, Bates No. 000025, 000589-000590; Vacancy Announcement for GS-12, Bates No. 000587).  <u>See</u> Response to Paragraph No. 148.

153. Mr. Gebril was initially ranked by the merit promotion panel but as a non-citizen should not have been rated on that certificate.  He was not placed on the merit promotion certificate but rather evaluated  under the DEU procedure for non-citizens (<u>See</u> Bates No. 000016). His score was 22, higher

than plaintiffs El-Bishlawy (21) and Alkhateeb (21)(Bates No. 000014).  Under the DEU procedures he was rated at 92 (the rankings ranged from 92-97)(Bates No. 000006).

154. The defendant admits that plaintiffs Abdelkarim and Abdelrahman applied under the DEU procedures and were thus rated by a rating and ranking panel for the GS-13 positions (Bates No. 000006).

155. Admitted.

156. The Court is directed to the DEU and merit promotion certificates for a full and accurate statement of their contents (Bates Nos. 000006, 000014).

157. Admitted, but this statement is immaterial.

158. This paragraph is argument of counsel.  The selections at issue were done in April, 2002 and September, 2002.  Mr. Harb's deposition was taken in December, 2004 and in early 2005. Mr. Harb readily corrected his testimony once his memory was refreshed.  It is clear that he never saw the merit promotion panel "rating" sheets (Harb Dep., Vol. I, pp. 142-144; Bates No. 000014).

159. Mohamed Cherkaoui (GS-13 selectee) was rated no. 6 out of 17, receiving a score of 24.66.  Mr. Abdelkarim received a score of 27.33 and Ms. Abdelrahman received a score of 25.33 - a difference of 2.67 and .6, respectively (Bates No. 000014).  This is immaterial.  Moreover, the ratings on the merit promotion

certificate do not go to the selecting official (Bates No. 000007). Mr. Harb was not referring to Mohamed Cherkaoui but his brother Adil Cherkaoui (Harb Dep., Vol II, p. 454-457). The remainder of this paragraph accurately reflects Mr. Abdelkarim's and Mr. Elshinnawi's testimony but their opinions are immaterial and fail to raise an issue of material fact.

160. The plaintiffs accurately quote a small segment of Mr. Marsh's interview notes and the opinions of Ms. El-Bishlawy who had personal difficulties with Ms. Beldi. Mr. Dahiyat "confirms" that he heard complaints from the plaintiffs concerning Ms. Beldi (Dahiyat Dep., pp. 92-34). Moreover, Mr. Dahiyat was not surprised Ms. Beldi was selected (See Dahiyat Dep., pp. 117-119 ("I was just requesting why")). The statements in this paragraph fail to raise an issue of material fact.

161. This paragraph contains plaintiffs' opinions, erroneous conclusions, and argument. The allegations of this paragraph fail to raise an issue of material fact (See Harb Dep., Vol. I, p. 137; Marsh Vol. I, p. 219 (good editor, good interview)).

162. This paragraph contains plaintiffs' opinions, erroneous conclusions, and argument. The allegations of this paragraph fail to raise an issue of material fact (Harb Vol. I, pp. 154-155; Marsh Vol. I , p. 216 (reporting, management skills, interview, application).

163. Although the vacancy announcement required the Shift

38

Editor to be capable of serving as a Broadcaster, they did not anticipate that they would go on the air (Harb Dep., Vol. I, pp. 226-229).

164. This is plaintiffs' conclusion and argument, not an issue of material fact.

165. Mr. George Shammas (age 68) was already a GS-13. This was a lateral transfer not a promotion for Mr. Shammas. This paragraph consists of plaintiffs' opinion, and conclusions concerning Mr. Shammas' qualifications for the GS-13 Shift Editor position. He was a GS-13 Senior Editor for the Arabic Service and had supervisory and management responsibilities (Bates No. 000171).

166. This paragraph consists of plaintiffs' opinion and conclusions and fails to raise an issue of material fact. The defendant admits that she is a non-citizen, but denies that she was not qualified for the position (See Marsh Dep., Vol. I, pp. 348, 458-359; Harb Dep., Vol. I, pp. 264-267).

167. This paragraph contains plaintiffs' opinions and conclusions and fails to raise an issue of material fact. The defendant admits that Mr. Gebril is a non-citizen. The vacancy announcement for the GS-12 position did not have an educational requirement (Bates No. 000589; Harb Dep., Vol. I, pp. 264-267; Bates No. 000561-000562; Marsh Dep., Vol. I, pp. 357-358).

168. This paragraph contains plaintiffs' opinions,

conclusions, and arguments.  It fails to raise an issue of material fact.  The defendant admits that Mr. Hssaini was a non-citizen.  The defendant admits that he received a 91 on the DEU certificate (Bates No. 000557; Marsh Dep., Vol. I, pp. 357-358; Harb Dep., Vol. I, p. 264-267).

169. This paragraph contains plaintiffs' opinions and characterizations of the evidence and fails to raise an issue of material fact.  The defendant admits that Ms. Gandji's interview notes reflect that he appeared more interested in sports than the interview.  The defendant notes that he had been an IRB since 1984, had a degree in linguistics from Georgetown, and an MA in International Studies from Johns Hopkins University (Bates No. 000076).

170. This paragraph contains plaintiffs' opinions, conclusion, and legal arguments.  It fails to raise an issue of material fact.  The defendant admits that Ms. Abaza has been an IRB since 2000 (Marsh Dep., Vol. I, pp. 293-294 ("she gave a superb interview").  She is an Egyptian and graduated from Cairo University in Broadcasting as did several of the plaintiffs (Harb Dep., Vol. II, pp. 636-360).

171. This paragraph contains plaintiffs' characterization of the testimony.  It fails to raise an issue of material fact.  The defendant notes that Mr. Elshinnawi supervised Ms. Rabie for approximately four months prior to her selection and that the

merit promotion certificate provided by the selecting official
does not contain the relative scores of the candidates (Marsh
Dep., Vol. II, pp. 293, 335-339; Bates No. 000558).

172. This paragraph is immaterial and fails to raise a
material issue of fact.

173. This paragraph contains Ms. Elshinnawi's personal
opinion which fails to raise an issue of material fact.  The
defendant notes that Mr. Elshinnawi was not selected for a D.C.
correspondent position in February, 2002 and he challenges the
underlying assumptions which he believes to be management's
reason for the creation of SAWA (See ROI, Ex. 17, p. 4).

174. This paragraph contains Mr. Bekheet's personal opinion
and unsupported conclusion that fails to raise an issue of
material fact.

175. This paragraph contains Mr. Ghunhein's personal and
uninformed opinion that fails to raise an issue of material fact.
Mr. Ghunhein retired in 1999 (ROI, Ex. 24, p. 1).

176. The defendant admits that Mr. Dahiyat served as Acting
Director of the Arabic Services and supervised the plaintiffs as
well as the selectees for a period of time.  The defendant admits
that plaintiffs have correctly quoted from Mr. Dahiyat's
testimony.  However, the defendant notes that Mr. Dahiyat
believed that the selectees that worked for him were also
qualified for the GS-12 positions (Dahiyat Dep., pp. 123-124).

41

177. This paragraph fails to raise an issue of material fact. Mr. Dahiyat's disagreement with Mr. Harb's decisions fails to raise an issue fact. Mr. Dahiyat recognizes that his experience with the candidates may be different than Harb's experience with the candidates (Dahiyat Dep., pp. 179-180).

178. The defendant admits that plaintiffs correctly state Mr. Dahiyat's opinion. This fails to raise an issue of material fact. Mr. Dahiyat was not present during the interviews (Dahiyat Dep., pp. 118). He was not familiar with the people in SAWA, what they were looking for, or how they were conducting their business (Id., 116).

179. This paragraph fails to raise an issue of material fact (See Response to Paragraph Nos. 176-178).

180. This paragraph contains plaintiffs' self-serving opinion and conclusion which fails to raise an issue of material fact. The defendant notes that the plaintiffs were not applying for (or being considered for)their old IRB positions at the Arabic Service, but rather they were being considered for positions that had a radically different method of broadcasting than had ever been done previously by VOA (Marsh Dep., Vol. I, pp. 116-117, 203, 276-277).

181. The defendant admits that plaintiffs correctly quoted from the deposition of Mr. Welch, but this is immaterial and fails to raise an issue of material fact (See Response to

Paragraph No. 180).

182. <u>See</u> Response to Paragraph Nos. 180-181.

183. The defendant admits that plaintiffs' contend that they had to train some of the "new" IRBs (emphasis supplied). The new IRBs identified by plaintiffs were not selected by Mr. Harb during the initial staffing actions, but were hired after the selections at issue in this case. Plaintiffs did not apply for these subsequently advertised positions at SAWA (<u>See</u> Response to Paragraph No. 5). The defendant notes that frequently new employees, who are eminently qualified for a position, are trained by the existing staff.

184. This is plaintiffs' contention, not an issue of material fact.

185. The defendant admits that appropriate positions for the plaintiffs reassignments to VOA were not found for several months. The defendant notes that until the selections were made management would not know who to reassign or which positions would be appropriate and available. The four unfilled positions referenced in this paragraph were not positions covered by the MOU and the initial staffing at issue here (ROI, Ex. 35; Bates Nos. 001129, 001130). Plaintiffs, except for Ms. El-Bishlawy, did not apply for these positions (Abdelkarim Dep., December, 2004, p. 22, 76; Abdelrahman Dep., December, 2004, pp. 27, 28, 61; Alkahateeb Dep., January, 2005, p. 28; El-Masry Dep,,

January, 2005, pp. 34-36, January, 2007, p. 32; El-Bishlawy Dep., December, 2004, p. 28, January, 2007, p. 23-24).  The defendant admits that SAWA utilized the plaintiffs services until they were reassigned in December, 2002.  The remainder of this paragraph is immaterial and fails to raise an issue of material fact.

186. This paragraph characterizes the evidence.  The defendant admits that plaintiffs correctly quotes from Mr. Hooper's email.  The defendant also notes that the radically different method of acquiring news, translating news, content, style, format, and pace may have had an effect on some of the scripts.  This paragraphs fails to raise an issue of material fact.

187. Admitted, but this is immaterial and fails to raise an issue of material fact.  Moreover, the plaintiffs had never worked as editors under the circumstances presented by SAWA's new fast paced format and news gathering methods (Marsh Dep., Vol. –, pp. 116-117, 203, 276-277).

188. The defendant admits that plaintiffs' correctly quote Mr. Dahiyat's testimony (See Response to Paragraph Nos. 186, 187).

189. The article by one reporter at the "American Prospect" fails to raise an issue of material fact.  Clearly, this article is based upon heresay and information provided by a VOA employee. Given the fact that the plaintiffs believe that only "classical

Arabic" should ever be used in broadcasting to the Middle East and their disappointment in not being selected, it is hard not to reach the conclusion that they are the source of the hearsay.

190. This statement reportedly made by a Lebanese journalist reported by Mr. Elshinnawi is hearsay and fails to raise an issue of material fact or evidence of discriminatory intent.

191. This statement allegedly made by Mr. Harb fails to raise a material issue of fact. At best this statement reflects the new direction of SAWA, including the use of colloquial Arabic, a change that was uniformly opposed by plaintiffs who preferred classical Arabic espoused by Radio Cairo (See Harb Dep., Vol. II, p. 466).

192. The defendant admits that Mr. Elshinnawi offered to help out SAWA, but Mr. Harb did not accept this offer. The Agency is unaware of the nationality of any correspondent hired by Mr. Harb. The plaintiffs were not considered for nor did they apply for the correspondent positions.

193. Admitted. The Arabic Service was dominated by Egyptian IRBs.

194. The defendant admits that one Lebanese was hired as a GS-13 (Nassif). No selectees for the GS-12 positions at issue were Lebanese (Indeed, the Arabic Service had no Lebanese staff). Rather, the nationalities of the selectees reflects a cross-

45

section of nationalities in the Arabic world and the pan-Arabic nature of Radio SAWA (See Defendant's Motion for Summary Judgment (Mot.), pp. 25-38). The subsequent hires are immaterial because plaintiffs failed to apply for any of those positions.

195. Admitted.

196. Denied as stated. The defendant admits that the style book was changed to reflect a pan-Arabic style and colloquial Arabic (Bates Nos. 002318-002322; Abdelkarim ROI, Ex. 7, p. 7). The decision to no longer broadcast in classical Arabic was made by BBG/VOA management (Bates Nos. 002318-002322). This fails to raise an issue of material fact.

197. This paragraph is plaintiffs' unsupported opinion and legal argument. The record shows that Radio SAWA was a dramatic change in style and format from the broadcasting done by the Arabic Service (Marsh Dep., Vol. I, pp. 116-117, 203, 276-277; Gandji Dep., Vol. I, pp. 67-68, Vol. II, pp. 169-170). The emphasis in SAWA was towards a pan-Arabic language style and away from classical Arabic (Proposal, Bates Nos. 002318-002322). Mr. Harb gave instructions on style to insure consistency in the spelling and of terms in the way words were pronounced (Harb Dep., Vol. II, pp. 495-496). This is consistent with defendants statement of facts Paragraph No. 15.

198. See Response to Paragraph No. 197.

199. See Response to Paragraph No. 197. Up through at least

46

January, 2005, SAWA was not broadcast in Egypt because there was
no FM station carrying the broadcast (Harb Dep., Vol. II, pp.
495-497).

200. <u>See</u> Response to Paragraph No. 197.  Defendant admits
that some of the promos were done by individuals with Lebanese
accents (Harb Dep., Vol. II, pp. 496-497).  At that time, SAWA
was not an FM radio channel in Egypt (<u>Id</u>.).

201. <u>See</u> Response to Paragraph No. 189.

202. <u>See</u> Response to Paragraph No. 200.

203. Mr. Harb's affidavit to the EEO investigator was
submitted on August 29, 2003.  His deposition was taken in
December, 2004 and January, 2005.  Moreover, someone can speak
classical Arabic with a regional accent (<u>See</u> Harb Dep., Vol. III,
pp. 640-641).  A change in how the promos were done during this
period does not create a material issue of fact.  Further, Mr.
Harb's failure to remember the timing of all the changes is
immaterial.

204. This paragraph contains plaintiffs' opinions and
argument and does not create a material issue of fact.  The
selection Mr. Sawan for a temporary promotion is not at issue in
this case (Abdelkarim Dep., December, 2004, pp. 22, 76;
Abdelrahman Dep., December, 2004, pp. 27-28, 61; Alkhateeb Dep.,
January, 2005, p. 28; El-Masry Dep., January, 2005, pp. 34-36;
El-Bishlawy Dep., January, 2007, pp. 23-24).  This position was

47

advertised in July, 2002.  Except for the plaintiff El-Bishlawy,
the plaintiffs failed to apply for this position (Id.).  The
selection procedures for the initial staffing of SAWA under the
MOU did not apply (ROI, Exhibit 35).  The selectee was not
Lebanese.  He was Palestinian and grew up in Yemen (Marsh Dep.,
vol. I, pp. 60-61).  He was functioning as a Senior Editor (Marsh
Dep., Vol. I, p. 103).

205.  The allegations in this paragraph are immaterial.  The
individuals identified in this paragraph were selected subsequent
to the selections at issue here.  Moreover, plaintiffs failed to
apply for any of these subsequent positions and failed to note
the nationalities of the individuals being considered for these
positions.  Finally, defendant notes that a number of these
"positions" were independent contractors.  As employees,
plaintiffs would be ineligible to compete for these "positions"
without resigning their federal positions.

206.  This paragraph is immaterial.  Mr. Harb did not know
Magda Kamal.  Mona Bekheet was working on the internet and the
internet was discontinued.  Consequently, as a contractor (POV)
her services were no longer needed (Harb Dep., Vol. III, p. 616-
617).  Abdellah Hamed Omar was a POV.  There is no indication
that Mr. Omar applied for one of the advertised correspondent
positions at SAWA.  Mr. Omar was on the register to be hired at
the GS-9/11 level.  The correspondent positions were at the the

48

GS-12 level (Bates Nos. 002313, 002363).

207. This paragraph consists of plaintiffs' conclusions and argument.  The only selections at issues are the initial staffing selections at SAWA for which the plaintiff were considered (20 positions; Bates Nos. 001129-001130).  The remaining 38 selections allegedly made by Mr. Harb are immaterial.  None of the plaintiffs, except plaintiff El-Bishlawy, who applied for the temporary promotion position in July, 2002, applied for the remaining 38 selections (see also Response to Paragraph No. 24).

208. This paragraph is hearsay and consists of isolated quotes taken out of context.  It fails to raise an issue of material fact.  Plaintiffs reference a PBS interview of a Professor Fandy's in January, 2003, who Mr. Harb did not know until shortly after the interview January, 2003 (Harb Dep., Vol II, pp. 466-471).  Mr. Fandy's affidavit was taken in April, 2005 and he remembers that they met shortly before the date of the interview.  This issue of fact is immaterial.  Similarly, Mr. Fandy's declaration recounts a statement allegedly made by Mr. Harb in the Spring of 2002 in which he quotes Mr. Harb and indicates "or words to this effect." (Fandy Affidavit, ¶ 8). Admittedly, SAWA was directed to a younger audience and clearly Mr. Fandy had an unfavorable opinion of the SAWA approach directed to the younger audience (Id., ¶ 10).

209. The defendant admits that the initial format was

49

designed to broadcast music for most of the hour to attract a younger audience (Bates No. 000232). However, plaintiffs failed to accurately describe and indeed mischaracterize the format (See Defendant's Memorandum of Points and Authorities, p. 8-9; Bates Nos. 000238-000232).

210. This is plaintiffs' unsupported opinion (<u>See</u> Marsh Dep., Vol. I, pp. 116-117, 203, 276-277). The news gathering and writing (not translation) from the news wire service was completely different than the presentation of news by the Arabic Service (<u>Id</u>.).

211. This paragraph is immaterial and fails to raise an issue of material fact. It consists of plaintiffs' characterization of the testimony and argument (<u>See</u> Response to Paragraph No. 210).

212. This paragraph fails to raise an issue of material fact. The defendant notes that the response was to an "either or" choice in the question (ROI, Exs. 21, p. 3, 22, p. 3). This paragraph is plaintiffs characterization of the testimony, not a statement of fact.

213. This paragraph correctly states plaintiff El-Masry's opinion of her own style and shows at the VOA (<u>Compare</u> Marsh Dep., Vol. I, pp. 209, 212-213; Gandji Dep., Vol. II, pp. 230). It fails to raise an issue of material fact.

214. The plaintiffs correctly quote from Mr. Marsh's

interview notes.  The defendant observes that these are Mr.
Abdelkarim's statements concerning his vision of where he would
like to be professionally in three years (Marsh Dep., Vol. II, p.
448).  This paragraph fails to raise an issue of material fact.

215. This paragraph mischaracterizes the testimony.  Mr.
Marsh does not recall a specific comparison between the
qualification of non-citizen vis a vis the plaintiffs (Marsh
Dep., Vol. I, pp. 105-106, 121-122, 131, 187-190, 212-213, 224-
225, 249-250, 273-275).

216. This paragraph mischaracterizes Ms. Gandji's testimony
and the requirements to select outside candidates.  Ms. Gandji'
clearly states that every candidate who was referred, was
interviewed and considered (Gandji Dep., Vol. I, pp. 58-64).
Plaintiffs imply that because they were on the certificate of
eligibles, i.e. meet the qualifications for the positions they
had to be hired.  This is incorrect.  There was no provision for
preferential "hiring."  Under plaintiffs theory there would be no
need for the interviews or a selecting official.

217. This paragraph consists of plaintiffs' characterization
of Mr. Harb's testimony and their argument.

218. September 9, 2002 is the date plaintiffs learned that
they were not selected (ROI, Tab 5, p. 3)  Plaintiffs contacted
the EEO Office in September after they were advised that they
were not selected for reassignment to SAWA (Id.).  There is no

record that they contacted an EEO counsel within 45 days

regarding the GS-13 selections which became effective April 21,

2002 and May 13, 2002 (outside candidates).  They did not contact

an EEO counselor within 45 days of learning about the GS-13

selections.

Respectfully submitted,


__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205


Of Counsel:
ELIZABETH A. PARISH
Office of General Counsel
Broadcasting Board of Governors