**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                                    )
MOHAMED ABDELKARIM, et al.,         )
                                    )
            Plaintiffs,             )
      v.                            )
                                    )
                                    )Civ. Action No. 05-1783 (EGS)
                                    )
KENNETH Y. TOMLINSON,               )
Chairman,                           )
Broadcasting Board of Governors     )
                                    )
                Defendant.          )
_____)
```

<u>**MEMORANDUM OPINION**</u>

This case arises from a employment dispute by former employees of Voice of America ("VOA") who were not hired by Radio SAWA after a reorganization of VOA.  Plaintiffs allege discrimination based on national origin, religion, and age.  Defendant argues that the plaintiffs did not exhaust administrative remedies and that their claims fail under *McDonnell Douglass* because while they meet the *prima facie* test, they cannot show pretext.  Upon consideration of the motion, responses and replies thereto, applicable law, and the entire record, the Court finds that this case is fraught with genuine issues of material facts in dispute.  Accordingly, defendant's Motion for Summary Judgment is **DENIED**.

**I.   BACKGROUND**

Plaintiffs were employees of VOA before it ended its Arabic Service and switched to Radio SAWA, also an Arabic language radio station supported by the U.S. Government.  Plaintiffs include: Mohamed Abdelkarim, a U.S. citizen of Egyptian background, who is a practicing Sunni Muslim; Zainab Abdulrahman, a U.S. citizen of Egyptian background, who is a practicing Sunni Muslim; Hayat Alkhateeb, a U.S. citizen of Palestinian background, who lived in Syria for many years and is a practicing Sunni Muslim; Amina El-Bishlawy, a U.S. citizen of Egyptian Background, who is a practicing Sunni Muslim; and Faiza Elmasry, a U.S. citizen of Egyptian background, who is a practicing Sunni Muslim.

In early 2001, the Broadcasting Board of Governors decided to replace the VOA Arabic Service with the Middle East Radio Network ("MERN"), which eventually became known as Radio SAWA. According to James Hooper, Radio SAWA's staff director, "Radio SAWA was set up because of the overwhelming need [of] the United States government to reach people in the Middle East."  VOA employees were allowed to compete for jobs with Radio SAWA through an agreement that was worked out with their union.  MERN was allotted thirty-two positions; there were thirty-four employees in the VOA Arabic Service.  VOA posted vacancy announcements for multiple positions at the GS-12 and GS-13 grade levels.  Pursuant to a memorandum of understanding worked out between VOA and the union, VOA employees who were only seeking

lateral reassignment to Radio SAWA were not required to apply under a merit promotion vacancy announcement.  Only employees who were seeking promotion were required to apply under the merit promotion announcement.

Jack Welch, the Director of Personnel, assured VOA staff that current employees would be considered for positions with Radio SAWA before outside employees and lower graded employees were considered.  Welch also set out other criteria for selecting Radio SAWA employees in this order:  The panel would first consider internal candidates at grade of position to be filled; if no internal candidates met the requirements, internal candidates who did not apply but who were at grade of the position to be filled would be considered; if none of the candidates met those requirements, the panel would look to internal applications for promotion; if none of these requirements were met, then external candidates would be considered.  Welch noted that external hires or contractors would be used only if a determination was made that no current staff member meets the requirements for the position involved.  The personnel department determined whether candidates for promotion met basic qualification requirements based on position description and qualification requirements supplied by MERN.  The selection process was also governed by the Hatch-Mundt Act, 22 U.S.C. § 1474, which grants hiring preferences to U.S. citizens

over non-citizens.  Morever, according to VOA policy, "[a] non-U.S. citizen may be appointed only after reasonable efforts to recruit equally or better qualified U.S. citizens have been made and have been unsuccessful."

Susan King, the personnel specialist who assisted in the processing of applications for the vacant positions, reviewed the applications that were received through the merit/competitive selection process to determine which candidates met the basic qualifications for the positions.  After candidates were ranked by a committee of three individuals, King issued a merit promotion certificate of eligibles to Moufac Harb, the Director of Network News for Radio SAWA.  This certificate contained the names of the individuals with the top ten scores from the rating panel, including plaintiffs Abdelkarim, Abdelrahman, and Elmasry.

King, however, was asked by her supervisor, Michael Conboy, to retrieve the list and issue a list with only five eligible candidates.  The second certificate contained the names of plaintiffs Abdulkarim and Abdelrahman.  Later, Welch instructed King to issue a third certificate that contained the names of all seventeen candidates who applied for the available positions.

With the exception of Elmasry, who withdrew her application, all of the plaintiffs applied for the GS-13 Supervisory International Radio Broadcaster ("IRB")/Shift Editor positions.

They were all on the certificate of eligibles, and they were interviewed by the selection committee.  None of them was selected for positions with Radio SAWA.  All of the plaintiffs also applied for the GS-12 IRB positions.  They were all included on the certificate of eligibles, and they were interviewed by the selection committee.  None of them was selected for positions with Radio SAWA.  Harb testified in his deposition that none of the plaintiffs were even minimally qualified to perform the jobs for which they applied.

Plaintiffs contacted VOA's Office of Civil Rights on November 7, 2002, and filed formal complaints on May 13, 2003. In January 2004, plaintiffs elected to proceed to a hearing before an administrative judge at the Equal Employment Opportunity Commission ("EEOC").  Discovery with the EEOC closed on January 11, 2005; plaintiffs withdrew their hearing request on January 12, 2005.  Plaintiffs then requested a Final Agency Decision ("FAD"), which they received.  On September 8, 2005, plaintiffs filed suit in this Court.  Discovery closed in this case on April 9, 2007.  Defendant filed a Motion for Summary Judgment on August 15, 2007, which this Court denied without prejudice on May 28, 2008.  Defendant filed a renewed Motion for Summary Judgment on June 13, 2008 that is currently before this Court.

## II.   DISCUSSION

### A.   Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  A fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Facts are material if they "'might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment bears the initial burden of demonstrating an absence of genuine issues of material fact. *Celotex*, 477 U.S. at 322; *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  "When a motion for summary judgment is properly made and supported, [however,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Celotex*, 477 U.S. at 324.  "'[A] mere unsubstantiated allegation . . .

6

creates no genuine issue of fact and will not withstand summary judgment.'" *Ginger v. District of Columbia*, 527 F.3d 1340, 1347 (D.C. Cir. 2008) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)) (alterations in original).  "Accepting . . . conclusory allegations as true . . . would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Keyes v. District of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004).  "'As employers rarely maintain records directly evidencing discrimination, an added measure of rigor or caution is appropriate in applying this standard to motions for summary judgment in employment discrimination cases.'" *Brownfield v. Bair*, 541 F. Supp. 2d 35, 41 (D.D.C. 2008) (quoting *Woodruff v. Peters*, 482 F.3d 521, 526 (D.C. Cir. 2007)).

## B.  Analysis

### 1.  Exhaustion of Administrative Remedies

Defendant argues that plaintiffs have failed to exhaust administrative remedies because they abandoned the administrative

process and failed to contact an Equal Employment Opportunity ("EEO") counselor on their harassment claim and their discrimination and retaliation claims regarding pay assignments and overtime within forty-five days.  In *Brown v. Tomlison*, 462 F. Supp. 2d 16 (D.D.C. 2006), this Court found that a complainant who timely elects a hearing before an EEOC administrative judge may withdraw from the hearing and proceed to federal court.  *See id.* at 19-20.  Plaintiffs in this case, however, went further than the plaintiffs in *Brown*.  Plaintiffs requested a FAD and received one.  They then filed suit in this Court within ninety days of receipt of the FAD.  Title VII authorizes a plaintiff to file suit in federal court "[w]ithin 90 days of receipt of notice of final action taken by a department, agency, or unit."  42 U.S.C. § 2000e-16©.  There is no reason for this Court to stray from the well-reasoned decision in *Brown*.

Defendant also complains that the plaintiffs benefitted from discovery before withdrawing their request for an administrative hearing.  Defendant, however, cites no case law that prevents plaintiffs from the course of action they took.  In fact, the EEOC's guidance makes clear that a complainant may voluntarily withdraw a request for a hearing at any time.  *See* Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 7-1 (Nov. 9, 1999) ("Generally, an Administrative Judge will conduct a hearing on the merits of a

complaint unless . . . the hearing request is voluntarily withdrawn.").  Plaintiffs did exhaust their administrative remedies, and their suit is properly before this Court.

### 2.  Discrimination Claims

Plaintiffs allege that they were discriminated against based on national origin, religion, and age in violation of Title VII. Employee allegations of discrimination trigger the familiar *McDonnell Douglass* burden-shifting framework in federal courts. *See Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002).  In the absence of direct evidence of discrimination, the courts use this framework to determine whether an employee-plaintiff has a colorable claim against his or her employer.  *See McDonnell Douglass v. Green*, 411 U.S. 792, 802 (1973).  According to the *McDonnell Douglass* framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence.  *See id.*; *Stella*, 284 F.3d at 144. If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  *Stella*, 284 F.3d at 144 (citing *McDonnell Douglas*, 411 U.S. at 802).  If the employer articulates a non-discriminatory reason for the adverse employment action, the burden then shifts back to the plaintiff, who must demonstrate that the employer's stated reason was merely pretext and that the true reason was discriminatory.  *Id.* (citing

9

*McDonnell Douglas*, 411 U.S. at 802).  If the plaintiff cannot demonstrate pretext, the employee's claims necessarily fail.

To establish a *prima facie* case of a discriminatory failure to promote or hire, plaintiffs must show: (1) that they belong to a protected group; (2) that they applied and were qualified for a job for which the employer was seeking applicants; (3) that despite their qualifications, they were rejected; and (4) that individuals were selected to fill the positions.  *See Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

Defendant acknowledges that plaintiffs have established a the *prima facie* case.  The burden is now upon the defendant to articulate a non-discriminatory reason for its failure to promote or hire.  While defendant argues that plaintiffs were not promoted or hired because plaintiffs failed to demonstrate that they had a "skill set" or the background for the new positions, the Court cannot make that determination at this stage because there are numerous material facts that are in dispute.  For example, there is a dispute about why three different lists of qualified candidates were produced.  Plaintiffs argue that one of the selectees complained to Harb that she was not on the original list and that Harb intervened on her behalf.  Harb denies this. There is also some discrepancy about who made the final decision about who was hired.  Harb says that the decision was made by the

committee.  There is evidence in the record that indicates that Harb made the decision and the other committee members deferred to him because he spoke Arabic.  There also seems to be a dispute about why plaintiffs were not hired.  While defendant argues that plaintiffs were not qualified, Harb testified that he has no memory of the interviews with plaintiffs.  Harb also goes back and forth during his testimony about whether or not he knew the ratings and scores of the candidates.  After claiming that plaintiffs were not qualified for the jobs for which they applied, Radio SAWA continued to rely heavily on them for assignments.  Finally, plaintiffs were required to train many of the people who were hired for the jobs for which plaintiffs applied.

These disputed facts are not exhaustive but are merely examples culled from the pleadings.  These issues are genuine, material, and disputed.  These claims are not ripe for summary judgment.

### 3.  Hostile Work Environment Claim

To establish a *prima face* case for a hostile work environment claim, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew

11

or should have known about the harassment, but nonetheless failed to take steps to prevent it." *Baloch v. Norton*, 355 F. Supp. 2d. 246, 259 (D.D.C. 20005).   Courts must look at the totality of the circumstances when making a determination of whether a hostile work environment exists.   *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).   This determination includes examining "the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"   *Id.* at 787-88 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 12, 23 (1993)).

Defendant acknowledges that plaintiffs are members of a protected class.   Viewing the facts in the light most favorable to the non-moving party, it is clear that plaintiffs' claims of a hostile work environment are not ripe for summary judgment. Plaintiffs allege that Harb said that he would "clean the Arabic Branch of Egyptians" and that there were too many Egyptians in the Arabic Service.   He also changed the VOA style to give preference to Lebanese dialects, phrasing, colloquialisms, and pronunciations.   Plaintiffs allege that Harb routinely made derisive comments about Radio Cairo, where many of the plaintiffs had previously worked.   They allege that he repeatedly denigrated the Egyptian dialect and ridiculed Egyptian cultural icons on a daily basis.   Plaintiffs do not complain of isolated incidents;

12

they complain of an on-going pattern of hostility towards their national origin, culture, and background.  They also complain of comments that Harb frequently made about their age.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris*, 510 U.S. at 21 (internal citations and quotation marks omitted).  Based on plaintiffs' allegations, a jury could find that the alleged "discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their [age], religion, or national origin [and therefore] offends Title VII's broad rule of workplace equality." *Id.* at 22.  Plaintiffs have established a *prima facie* case, and a jury could find that defendant violated Title VII.  Defendant's motion for summary judgment on the hostile work environment claims are similarly denied.

## III. CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment is **DENIED**.  An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

13

Signed:     EMMET G. SULLIVAN
            UNITED STATES DISTRICT JUDGE
            March 20, 2009